# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| BANK OF THE OZARKS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 212-107 |
| | * | |
| DKK DEVELOPMENT COMPANY; M. | * | |
| FRANK DELOACH, III; WILLIAM C. | * | |
| KILLGALLON; and MARTIN L. | * | |
| KILLGALLON, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court are two motions both filed by Plaintiff Bank of the Ozarks. See Dkt. Nos. 31, 33. Bank of the Ozarks' Motion for Summary Judgment, Dkt. No. 33, is **GRANTED** for the reasons stated below. As a result, Bank of the Ozarks' Motion for an Extension of Time to Complete Discovery and to Reopen Discovery, Dkt. No. 31, is **MOOT**.

## BACKGROUND

The facts of this case are undisputed.[1] Bank of the Ozarks seeks to recover on a promissory note executed by DKK Development for $930,000. Dkt. No. 1 ¶ 12. Martin Killgallon,

---

[1] Defendants did not file a response to Bank of the Ozarks' Statement of Undisputed Material Facts, and their argument focuses on legal rather than factual matters. See Dkt. No. 35.

1

William Killgallon, and Frank DeLoach (collectively "Guarantor Defendants") guaranteed the Note's repayment.

The Note and the Guaranty Agreements were executed by Bank of the Ozarks' predecessor, Oglethorpe Bank. Bank of the Ozarks acquired the loan documents after Oglethorpe Bank was closed by the Georgia Department of Banking and Finance. After the closure, the Federal Deposit Insurance Corporation (FDIC) was appointed the receiver for Oglethorpe Bank, and Bank of the Ozarks later purchased Oglethorpe Bank's loan documents from the FDIC.

Prior to its closure, Oglethorpe Bank made several attempts to "stave off" its eventual failure. In 2007, Oglethorpe Bank formed another entity, Oglethorpe Bank Holding Company ("the Holding Company"), to make it appear that Oglethorpe Bank had more capital. All the shareholders of Oglethorpe Bank were reissued shares of the Holding Company and the "same individuals served as the officers and directors of both entities." Bank of the Ozarks v. DKK Dev. Co., 726 S.E.2d 608, 610 (Ga. Ct. App. 2012), cert. denied, Dkt. No. 28, Ex. 1 (Oct. 15, 2012). The restructuring was designed so that the Holding Company could borrow money and then transfer that money to Oglethorpe Bank without an obligation to repay. If Oglethorpe Bank itself borrowed money, then its capital would not increase because that "loan was offset by a debt." Id. However, money borrowed by

the Holding Company and then transferred to Oglethorpe Bank would be characterized as an increase in capital because there was no obligation to repay. Id.

Two years after the formation of the Holding Company, Oglethorpe Bank was still struggling and in danger of falling below federal regulations, which would trigger regulatory action. Id. To avoid that, DeLoach, the vice chair of the Board of Directors of both Oglethorpe Bank and the Holding Company, devised a plan. Id. DKK Development, a company that DeLoach half owned, would borrow $2.5 million dollars from another bank. Id. Most of that money would then be lent to the Holding Company, which would pass the money onto Oglethorpe Bank as an equity contribution. Id. The hope was that this action would bide them time until economic conditions improved, at which point, Oglethorpe Bank could pay dividends to the Holding Company "which would enable the Holding Company to repay DKK." Id. Unfortunately that hope was never realized, and Oglethorpe Bank eventually failed.

DKK Development brought a declaratory judgment action in state court. DKK sought a judgment declaring that DKK Development's $930,000 loan from Oglethorpe Bank, which is the subject of the present suit, was set-off by DKK Development's $2.5 million loan to the Holding Company described above. Id. at 609. Before Glynn County Superior Court Judge Amanda

Williams, DKK Development argued that it was entitled to statutory and equitable set-off. The Superior Court agreed that DKK Development was entitled to equitable set-off and ordered that DKK Development's obligation to Oglethorpe Bank be deemed paid in full.

Bank of the Ozarks appealed.[2] DKK Development's argument on appeal was that:

> because the Bank and the Holding Company operated as a single entity, abused their corporate forms, and were alter egos of each other, DKK was entitled to set off its debt to the Bank against the Holding Company's debt to DKK. It also argued that it was entitled to the set-off because the Holding Company had acted as the Bank's agent in accepting DKK's loan.

Id. at 611. Although the Superior Court judge had only discussed equitable set-off in her ruling, the Court of Appeals discussed the requirements of both equitable and statutory set-off. See id. at 610 ("Whether the claim for a set-off is legal or equitable in nature, however, it must be between the same parties and in their own right.") (citing O.C.G.A. § 13-7-4). Ultimately the Court of Appeals held that "the set-off was improper because [Oglethorpe] Bank and the Holding Company were separate entities." Id. at 610. Thus, the requisite mutuality, necessary for either equitable or statutory set-off, was lacking. The Court of Appeals squarely rejected DKK

---

[2] During the course of the state court proceedings, Bank of the Ozark took over Oglethorpe Bank and was substituted as the defendant. Bank of the Ozarks, 726 S.E.2d at 609.

4

Development's arguments that Oglethorpe Bank and the Holding Company were the same entity because they were either alter egos of each other or the Holding Company was Oglethorpe Bank's agent. Id. at 611.

DKK Development filed a petition for certiorari to the Supreme Court of Georgia, however, that petition was denied on October 15, 2012. Dkt. No. 28, Ex. 1.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

"A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed." Fielborn Dev. Co. v. Colony Bank, 660 S.E.2d 801, 805 (Ga. Ct. App. 2008). "Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." Id.; see also Greenwald v. Columbus Bank & Trust Co., 492 S.E.2d 248, 250 (Ga. Ct. App. 1997). Defendants do not deny that the Note was executed, or that they have failed to pay. Dkt. No. 11.

Defendants' only remaining defense is based on statutory set-off. Defendants argue that DKK Development is still entitled to statutory set-off and that collateral estoppel does not apply because the issue of statutory set-off was not decided by the Superior Court, which held only that DKK Development was entitled to equitable set-off. See Dkt. No. 35. Defendants' arguments are ultimately unpersuasive.

"The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court." Cmty. State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011). The rationale being that "[o]nce a party has fought out a matter in litigation with the other party, he cannot later renew that duel." Id. (citing Comm'r of Internal Revenue v.

AO 72A
(Rev. 8/82)

Sunnen, 333 U.S. 591, 598 (1948)). "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." Id. (citations omitted). "In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion." Id. (citations omitted).

Georgia's doctrine of claim preclusion "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." Karan, Inc. v. Auto-Owners Ins. Co., 629 S.E.2d 260, 261 (Ga. 2006) (citing Waldroup v. Green Co. Hosp. Auth., 463 S.E. 2d 5, 7 (Ga. 1995)). Here, Defendants' arguments that Oglethorpe Bank and the Holding Company were either alter egos or agents were clearly litigated and decided, whether or not those issues were litigated and decided in the context of statutory set-off. Thus, DKK Development cannot relitigate those issues, even if they are now attempting to apply those doctrines to statutory, rather than equitable set-off.

Mutuality is required by both statutory and equitable set-off. See O.C.G.A. § 13-7-4 ("Setoff must be between the same parties and in their own legal right."). Equitable set-off only comes into play if statutory set-off is inapplicable. See

O.C.G.A. § 23-2-76 ("Regarding a setoff, equity generally follows the law; but, if there is an intervening equity not reached by the law or if the setoff is of an equitable nature, equity shall take jurisdiction to enforce the setoff."); Bank of the Ozarks, 726 S.E.2d at 610 ("The right to set off one legal demand against another, other than in cases covered by our statute, is itself an equitable right.") (citations omitted). DKK Development, therefore, cannot relitigate the issue of set-off and again argue that Oglethorpe Bank and the Holding Company were essentially the same party.

While claim preclusion only applies to identical parties or their privies, that does not change the fact that summary judgment is appropriate against all defendants, even the Guarantor Defendants who were not parties to the state court litigation. This case involves two layers of mutuality; set-off requires mutual parties between the obligations and claim preclusion requires mutual parties in both actions. However, if DKK Development's defense fails, so does the Guarantor Defendants' defense. The Guarantor Defendants have not identified any loans they made personally to the Holding Company; the sole loan identified to the Holding Company was made by DKK Development. Thus, set-off cannot independently apply to the Guarantor Defendants because the Guarantor Defendants made no individual loans to set-off their current

8

obligation. Their defense relies on DKK Development's loan, which, as discussed above, does not provide a basis for set-off.

In conclusion, Defendants have no viable defense and therefore summary judgment in favor of Bank of the Ozarks is appropriate.

## CONCLUSION

Bank of the Ozarks' Motion for Summary Judgment, Dkt. No. 33, is **GRANTED**. Accordingly, Bank of the Ozarks' Motion for Extension of Time to Complete and to Reopen Discovery, Dkt. No. 31, is **MOOT**. The Clerk of Court is directed to enter the appropriate judgment.

**SO ORDERED**, this 10th day of June, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA